**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

CAITLYN A. WILSON                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:22-CV-73-DAS

CLAY COUNTY, MISSISSIPPI, et al.                                    DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on the motion of the defendants, Clay County, Mississippi, and Eddie Scott, in his official capacity as the Sheriff of Clay County, Mississippi, for summary judgment. (Dkt 77)  After considering the matter, the court finds as follows:

## <u>1. FACTS</u>

The plaintiff, Caitlyn Wilson, was an investigative assistant for the Clay County Sheriff's Department, and Eddie Scott was the Sheriff of Clay County.  In the present action, Wilson alleges that while she worked for the county, Scott sexually harassed her.  Specifically, she alleges that for approximately eight months she was on a text thread with the sheriff and another county employee, Patty Stange.  While some of the texts from Sheriff Scott were innocuous, many times the subject matter was sexual in nature and many were clearly inappropriate at a workplace.  Wilson also describes an incident when Scott allegedly grabbed her and brushed his crotch against her as he pushed through a small space to get around her.  Shortly thereafter, Wilson explains that Scott came back and hugged her while placing his hand on her hips and pulling himself close to her.

Wilson also alleges that once she complained of the harassment, Scott retaliated, leading eventually to what she contends was her constructive discharge.  On the other hand, Scott claims

that any claims of sexual harassment or retaliation can be traced back to an incident where he reprimanded Wilson for disobeying his instructions related to a raffle winner in Clay County. Approximately two days after this reprimand, Wilson reported that Scott had been sending the sexual messages on the text thread. Next, Wilson filed her EEOC charge of discrimination, and the sheriff's office began an investigation pursuant to its policy. Less than one month after the EEOC charge was received, Sheriff Scott wrote a letter suspending Wilson from her employment, but the county attorney convinced him not to do this.

Nevertheless, a number of events took place subsequent to the EEOC charge. For example, Wilson's key fob was disabled, effectively keeping her from the conference room where workers socialized and had lunch with one another. She was not allowed in the foyer area or break room area other than to clock in or pick up a file. Scott instructed her to stay in her office, and several co-workers would not speak to her. As a result, Wilson often ate alone in her car. During this time period, Wilson also alleges that Scott would occasionally drive past her home.

## 2. SUMARY JUDGMENT

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgement as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility to inform the district court of the basis for its motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002); *S.E.C. v. Recile* 10 F.3d 1093, 1097 (5th Cir.1997); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Furthermore, the court, "must view 'all facts and inferences ... in the light most favorable to the nonmoving party.' " *Id.* (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). *McCarty v. Hillstone Restaurant Group, Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).

## DISCUSSION

In the present case, the plaintiff alleges four causes of action. First, Quid Pro Quo Sexual Harassment and Hostile Work Environment; second, Sex Discrimination in violation of Title VII and the Equal Protection Clause; third, Retaliation; and fourth, violation of the Family and Medical Leave Act. In her response to the defendants' motion for summary judgment, the plaintiff has conceded the quid pro quo sexual harassment claim and the Family Medical Leave

Act claim.  After considering each claim, the court finds the defendant's motion for summary judgment should be granted in part and denied in part.

## SEXUAL HARASSMENT

The plaintiff makes two separate claims related to her sexual harassment allegations.  She alleges a *quid pro quo* claim and a hostile work environment claim. Because she did not respond to the defendant's motion as it related to the *quid pro quo* allegation, the court deems this claim abandoned. To establish a hostile work environment claim, the plaintiff must prove five elements:  (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.  *Wood v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001).

In its motion the defendant focuses specifically on the fourth element, arguing the plaintiff cannot show she was subjected to any sexual harassment that affected a term, condition, or privilege of employment. Alleged harassment affects a term, condition, or privilege of employment when the conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  The conduct "must be both objectively and subjectively offensive" so that the victim perceives it as hostile and a reasonable person would also find it hostile. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Whether the environment is objectively offensive is based on a totality of the circumstances, and the court looks to factors such as "(1) the frequency of the discriminatory

4

conduct; (2) its severity; (3) whether it is physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id. (*citing *Harris*, 510 U.S. at 23)).

The defendant argues that his behavior was neither severe nor pervasive enough to create a hostile work environment, but the court sees this as an issue better left for a jury. The plaintiff points to text messages calling the plaintiff and her co-worker, "bitches" and "hos." The plaintiff also points to a text in which sheriff clearly alluding to sexual conduct appears to ask the plaintiff if she is prepared to "service him." In another, he texted the plaintiff and Stange to "bend over" to show them how he could inflate their rear end. To be sure, the defendant argues that the plaintiff was no shrinking violet, pointing to evidence that she engaged in sexual banter with co-workers and alleging she had sexual relationships with more than one of her co-workers. At this summary judgment stage, however, to grant the motion the court would need to find the sheriff's emails and his alleged behavior as objectively inoffensive, and looking at the totality of the circumstances, the court cannot do that.

In support of its position that the sheriff's behavior in the present case was neither severe nor pervasive, the defendant relies in large part on *Shephard v. Comptroller of Pub. Accounts o State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) and its progeny, including *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004). However, *Shephard* and *Hockman* have been called into question because they applied the wrong legal standard for objectively offensive conduct, requiring proof that the conduct was both severe *and* pervasive. *See Royal v. CCC & R Tres Aroboles, LLC*, 736 F.3d 396, 403 (5th Cir. 2013). Moreover, much has changed in the world in the past twenty years, and the court is confident that the behavior described in *Shepard* and the like would not be tolerated today. Regardless, the court finds the

text messages and actions in the present case even more severe or pervasive than the behavior described in those older cases, and thus summary judgment as to this claim will be denied.

## **RETALIATION**

To establish a claim for retaliation, the plaintiff must first make out a *prima facie* case by demonstrating: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Saketkoo v. Administrators of the Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (quoting *Brown v. Wal-Mart Stores*, 969 F.3d 571, 577 (5th Cir.2020)). In its motion, the defendant first argues the plaintiff cannot show she suffered an adverse employment action.

The plaintiff responds that some of the adverse employment actions that occurred include, prohibiting Wilson from entering the foyer or breakroom where other employees ate lunch or took breaks. Wilson explains that as a result she ate lunch in her car at times. Wilson contends that on several occasions, the sheriff drove by her Starkville home located miles from Clay County. She claimed he accused her of making false claims as to the hours she worked. She claims the sheriff had an investigator other than the one investigating her claims obtain multiple statements from co-workers, alleging unrelated sexual activity, including some false statements. She said as a result of the sheriff's actions, several of her co-workers refused to speak to her.

In its reply, the defendant does not address whether these alleged incidents constitute an adverse employment action but argues that there is no causal connection between these acts and any adverse employment action. In support of this argument, the defendant points to the timing between the time Wilson filed her EEOC claim and the date of her alleged constructive discharge.

6

It is not disputed that there was approximately nine months between the two events, and the defendant points to case law that provides even five months between events might not be enough. *See Lyones v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). However, the court finds there was less than nine months between her claim and the alleged actions that eventually caused her alleged constructive discharge. The court also finds that in addition to the precise timing of the events, they are close enough in time to create an issue of fact for a jury to determine whether they were related or not.

In its reply the defendant for the first time argues that even if the plaintiff made out a *prima facie* case, that it provided a legitimate, nondiscriminatory reason for its actions, and that plaintiff has failed to show that reasoning was pretextual. While it is unclear what reasons have been provided for the sheriff's actions, including driving past her Starkville home or keeping her from using the break room, it is clear to the court that there is a factual dispute as to whether the defendant retaliated against the plaintiff, and as such, summary judgment is not appropriate as to this claim.

## <u>COUNTY IMMUNITY</u>

Clay County contends that it must be dismissed from this action because it is not Wilson's employer, citing *Oden v. Oktibbeha County, Mississippi,* 246 F. 3d 458 (5th Cir. 2001). In *Oden* the Fifth Circuit Court of Appeals found that the trial court should have dismissed the county in an action alleging race discrimination in promotions by a sheriff's deputy. The court found that the sheriff in his official capacity -- not the county -- was the deputy's Title VII employer, because "Mississippi law allows a sheriff to appoint, remove, and fix the compensation of his deputies, subject to the county board of supervisor's approval of the sheriff's budget." *Id.* at 465. Additionally, the sheriff has sole responsibility for hiring, promoting, and

establishing the deputies' wages, with the county's responsibility limited to the Sheriff's budget and providing the needed funding.

The plaintiff does not contest that this is the holding of *Oden,* but urges the court to nevertheless deny summary judgment on this issue. The plaintiff argues that under 42 U.S.C. § 2000e(b) the county would be liable because it is an employer of "fifteen or more employees," and liable for the "agent" of such an employer. Because a sheriff may be considered an agent of the county, the plaintiff argues the county can be held liable under respondeat superior for the acts of the sheriff. *See Owens v. Rush*, 636 F. 2d 283, 287 (10th Cir. 1980). The plaintiff also argues that the holding in *Oden* conflicts with Fifth Circuit law which recognizes that official capacity actions against an official are effectively suits against the entity.

Despite the plaintiff's argument, the court finds that *Oden* is controlling authority for the proposition that the sheriff acting in his official capacity and not the county is Wilson's employer. Consequently, the county will be dismissed from this action.

## **EQUAL PROTECTION CLAIM**

Unmentioned in the defendant's original motion for summary judgment was the fact that the plaintiff has asserted a claim for sex discrimination and sex harassment under not only Title VII, 42 U.S.C. § 1342, but also under the Equal Protection Clause. The plaintiff has alleged that the sheriff violated her Fourteenth Amendment rights to equal protection by subjecting her to sexual harassment because she is a woman but not subjecting men to this conduct. She brings the case under § 1983. The plaintiff pointed to this claim in her response, arguing that the defense motion was only for partial summary judgment.

The defendants responded that the plaintiff's equal protection claim is barred by the Supreme Court decision of *Enquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008).

8

But *Enquist* on its face is inapplicable to this action. As the Supreme Court noted the question presented in that case was "whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, *with no assertion that the different treatment was based on the employee's membership in any particular class*." *Id.* at 596. (emphasis added). The Supreme Court held there was no place for such a claim in the context of public employment. *Id.* While Enquist alleged race, sex and gender discrimination, her equal protection claim only alleged that she was fired for "arbitrary, vindictive, and malicious reasons." *Id.* at 595. In the present case, Wilson's allegations and case hinge on her gender and membership in a particular class.

Moreover, public employees may proceed both under Title VII and on a constitutional claim, even for the same factual circumstance, so long as the employment conduct violates not only the provisions of Title VII but some independent constitutional right. In *Johnson v. Railway Express Agency,* 421 U.S. 454 (1975), the Supreme Court held that Title VII did not preempt the Johnson's race discrimination claim brought under § 1981, finding instead that "despite Title VII's range and its design as a comprehensive solution for the problems of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Id.* at 459.

Relying on the Supreme Court's *Johnson* decision, the Fifth Circuit rejected a defendant's argument that Title VII preempted the plaintiff's claim brought under § 1983. When "unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. " *Johnston v. Harris County Flood Control District*, 869 F. 2d 1565, 1576 (5th Cir. 1989). Johnston experienced a series of retaliatory employment actions leading to his being fired after testifying for a female

employee in an EEO proceeding to the embarrassment of his employer. The court found the defendant government agency violated both the Title VII anti-retaliation provisions and Mr. Johnston's First Amendment rights. *Id.* at 1576. Consequently, the *Enquist* decision does not bar the plaintiff's Equal Protection claim, and thus the motion for summary judgment as to that claim will be denied.

## **CONCLUSION**

Accordingly, for the reasons stated herein, the county will be dismissed from the present action along with the plaintiff's claim under the FMLA and her quid pro quo claim. For all other claims there exist material issues of fact to be determined by a jury.

**IT IS, THEREFORE, ORDERED** that the defendants' motion for summary judgment is granted in part and denied in part as follows:

1. Clay County, Mississippi is dismissed with prejudice from this action;

2. That the plaintiff's claims for quid pro quo sexual harassment is dismissed with prejudice;

3. The plaintiff's claim under the Family Medical Leave Act is dismissed with prejudice; and

4. That material disputes of fact exist regarding the plaintiff's claims for a hostile work environment and retaliation under Title VII and for sex discrimination under the Equal Protection Clause of the Fourteenth Amendment. The motion for summary judgment is denied as to these claims.

**SO ORDERED** this the 12th day of March, 2024.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**